J-A11032-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KAREN L. SOPKO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| THEODORE J. SOPKO | : | |
| | : | |
| Appellee | : | No. 1497 MDA 2017 |

Appeal from the Order Entered September 6, 2017
in the Court of Common Pleas of Dauphin County
Civil Division at No.:  2013 CV 8217 DIV

BEFORE:   STABILE, J., NICHOLS, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                    **FILED AUGUST 14, 2018**

Wife, Karen L. Sopko, appeals from the trial court order adopting the report and recommendation of the divorce master, which determined that she is to receive fifty-two percent of the marital estate and Husband, Theodore J. Sopko, is to receive forty-eight percent.  We affirm.

We take the following pertinent facts and procedural history from our independent review of the certified record.  The parties were married for thirty years, from September 17, 1983, until they separated on September 18, 2013.  They did not have children.  Both had bachelors' degrees, and neither was physically or mentally unable to work.  For approximately thirty years, Wife worked for AMP, Inc., and its successor, TE Connectivity, until TE laid her off in December 2008.  Husband worked in the auto sales business for the majority of the thirty-year marriage, with fluctuating income.

_____

*   Retired Senior Judge assigned to the Superior Court.

During the marriage, Husband purchased groceries for the household, paid for family vacations and vehicle repairs, and gave Wife money to use toward household expenses and personal items. Wife paid the mortgage, utilities, and other household expenses. She earned retirement benefits with AMP and TE, which have a combined marital value of approximately $500,000.00. Approximately one year prior to separation, Wife requested that Husband remove his name as beneficiary of the death benefit on Wife's TE 401(k) account. Husband did so, but remained the contingent beneficiary. With Wife's agreement, Husband borrowed $67,000.00 for his auto business, using the marital home as collateral.

On September 18, 2013, Wife filed a complaint in divorce pursuant to 23 Pa.C.S.A. § 3301(c) (mutual consent). On October 8, 2013, Husband filed a petition to add a claim for equitable distribution. On February 11, 2016, Husband filed his income and expense statement, a motion for the appointment of a master, and a petition to add a claim for divorce pursuant to 23 Pa.C.S.A. § 3301(d) (irretrievable breakdown). Wife filed her inventory and income and expense statement on March 1, 2016. Husband filed his inventory on March 2, 2016. The court appointed the divorce master on April 6, 2016, and she held a hearing with the parties on January 25, 2017.

On April 13, 2017, the master filed a report and recommendation. Therein, she recommended dividing the marital assets pursuant to a standard distribution in which Wife received fifty-two percent and Husband forty-eight

percent. She also recommended that Wife name Husband as the beneficiary on the 401(k) account "of an amount equal to his equitable distribution share in the plan." (Report and Recommendation, 4/13/17, at 29). On May 2, 2017, Wife filed exceptions to the master's report. On September 6, 2017, after argument, the court dismissed Wife's exceptions, adopted the master's report and recommendation, and divorced the parties from the bonds of matrimony.

Wife timely appealed on September 28, 2017. She filed a timely, court-ordered concise statement of errors complained of on appeal on October 20, 2017. *See* Pa.R.A.P. 1925(b). The court filed an opinion on November 27, 2017. *See* Pa.R.A.P. 1925(a).

Wife raises twelve questions for this Court's review.

A. Did the trial court abuse its discretion and/or commit [an] error of law by determining that [H]usband is entitled to forty-eight [] percent of [Wife's] retirement benefits in the application of the applicable factors as to equitable distribution under the Divorce Code as stated in 23 [Pa.C.S.A. §§] 3301[-3333]?

B. Did the trial court abuse its discretion and/or commit an error of law by failing to determine that this was a unique and exceptional case for purposes of the application of the Code factors as to equitable distribution and to allow for a non-standard percentage allocation of the assets between the parties[?]

C. Did the trial court abuse its discretion and/or commit an error of law in failing to allocate [W]ife's AMP pension and TE 401(k) retirement benefits (jointly referred to as "retirement benefits" at times hereafter) separately from the other assets of the marital estate, which complies with Pennsylvania law and is particularly applicable to the aforesaid unique and exceptional facts and circumstances of this case, particularly as to the Code factor of contribution[?]

D. Did the trial court abuse its discretion and/or commit an error of law in failing to determine that [W]ife should not be punished for leaving the marriage earlier in order to reduce or eliminate any share of [W]ife's retirement benefits being awarded to [H]usband[?]

E. Did the trial court abuse its discretion and/or commit an error of law by failing to consider and equitably apply the contribution factor under the Code, Section 3502(a)(7), as to a fair and equitable proportioning of the assets, in order to effectuate economic justice under the conditions of this marriage, and [H]usband's deliberate, and not just passive failure, to contribute to the marriage[?]

F. Did the trial court abuse its discretion and/or commit an error of law by failing to recognize that the standard types of non-financial contribution by a spouse, such as staying home to raise children, being physically or mentally unable to work, being uneducated, supporting the other spouse while in college, a short-term marriage and pre-marital contribution over the course of a thirty (30) year marriage, which would typically entitle said spouse to a standard "50-50" type of distribution, did not exist in this case[?]

G. Did the trial court abuse its discretion and/or commit an error of law in determining that [H]usband and [W]ife were of equal credibility[?]

H. Did the trial court abuse its discretion and/or commit an error of law by failing to recognize or acknowledge that [H]usband's lack of financial contribution was also due to his own illegal and/or fraudulent actions, and therefore his lack of contribution to the marriage was also deliberate, and not just circumstantial, by [H]usband's fraudulent and illegal activity in the auto sales business as verified by the AG[?]

I. Did the trial court abuse its discretion and/or commit an error of law in determining that [W]ife was only applying one (1) factor of the Code, the contribution factor, as the "primary" factor to the facts and circumstances of the case, and [W]ife was not considering or applying any other factors under the Code[?]

J. Did the trial court abuse its discretion and/or commit an error of law in determining that [H]usband's signing of the beneficiary

change document was offered into evidence by [W]ife to only establish a contractual or binding written agreement by [H]usband to waive his entitlement to [W]ife's TE 401(k) account?

K. Did the trial court abuse its discretion and/or commit an error of law in failing to determine that the $67,000 loan to [H]usband's business, taken out against the parties' first home, and [H]usband's failure to pay back said loan, causing the parties to have to pay off said $67,000 loan when the house was sold, was a dissipation of an asset by [H]usband[?]

L. Did the trial court abuse its discretion and/or commit an error of law in determining that both parties worked full time during the marriage, including but not limited to, the years in which [H]usband earned "zero" income, and/or little or no income[?]

(Wife's Brief, at 3-7) (unnecessary capitalization omitted).

Preliminarily, with . . . regard to [Wife's] claims, we are reminded of the observation by the late Honorable Ruggero J. Aldisert, formerly Senior Circuit Judge of the United States Court of Appeals for the Third Circuit, that this Court has often previously cited:

When I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that it is an irrebuttable presumption, but it is a presumption that reduces the effectiveness of appellate advocacy. **Appellate advocacy is measured by effectiveness, not loquaciousness**.

*Carmen Ent., Inc. v. Murpenter, LLC*, 2018 WL 1939781, at *5 (Pa. Super. filed Apr. 25, 2018) (citations omitted; emphasis in original).

Perhaps in recognition of this oft-cited admonition, Wife divides the argument portion of her brief into only five sections. (*See* Wife's Brief, at 22-58). However, this violates Pennsylvania Rule of Appellate Procedure 2119(a), which requires that "[t]he argument shall be divided into as many parts as

there are questions to be argued[.]" Pa.R.A.P. 2119(a). Additionally, Wife provides only boilerplate law about equitable distribution, (*see* Wife's Brief, at 18-20), one citation to a case she argues the court should have relied on, (*see id.* at 23, 26-29, 31, 57, 59), and no other pertinent legal citation or discussion thereof in support of her claims of trial court error. (*See id.* at 22-58); *see also* Pa.R.A.P. 2119(a)-(b) (argument section of brief shall contain pertinent legal citation and discussion thereof). Therefore, Wife's issues are waived. *See Lackner v. Glosser*, 892 A.2d 21, 29 (Pa. Super. 2006) ("[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention.") (citations omitted). Moreover, they would not merit relief.

Our standard of review in reviewing a trial court's equitable distribution order is well-settled:

> [A] trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an "abuse of discretion" unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

*Carney v. Carney*, 167 A.3d 127, 131 (Pa. Super. 2017) (citation omitted).

In her first argument, Wife maintains that the court "misappl[ied] the law in that it failed to even address the law and completely ignored the standard and typical non-financial contributions by a spouse[.]" (Wife's Brief, at 22). Specifically, she complains that the court erred when it failed to rely on *Mercatell v. Mercatell*, 854 A.2d 609 (Pa. Super. 2004), to grant her a greater percentage of the marital estate. (*See id.* at 22-29). We disagree.

In *Mercatell*, a panel of this Court affirmed the trial court's award of sixty percent of the marital property to wife. *See Mercatell*, *supra* at 612. In doing so, we observed:

We look at the distribution as a whole, in light of the trial court's overall application of the factors enumerated at Section 3502(a). . . . [In this case, t]he parties were married 19 years, were close in age, and both were in good health. Both had high school educations and during the marriage lived a middle-class existence. Wife worked full-time, often working two and three jobs at a time. Husband lost approximately 14 jobs and was certainly "underemployed" throughout the marriage. Wife paid for all the marital bills while Husband used his money to buy adult toys. Wife's job provides her with a pension, medical benefits, and other perks. Husband was not working full-time, but the court believed that was by choice.

*Id.* at 612.

Here, contrary to Wife's argument, the facts of **Mercatell** do not mirror those of this case. In **Mercatell**, husband lost fourteen jobs during the course of the parties' nineteen-year marriage, and spent his income on his "adult toys," not on household items. **Id.** In this case, although Wife was the primary earner, Husband worked full time in automobile sales for the majority of the marriage. (**See** N.T. Hearing, 1/25/17, at 113-23). The parties each maintained separate bank accounts. (**See id.** at 90-92). Husband gave Wife money that she deposited into her checking account from which she paid household costs. (**See id.** at 16, 19, 27-28, 92, 130-31). Wife gave Husband no money to deposit into his bank account. (**See id.** at 17). Husband paid for groceries and alcohol consumed by both parties. (**See id.** at 19, 25-26, 131). He maintained the parties' vehicles, and paid for their recreational items and vacations. (**See id.** at 131-33, 147). The parties shared the indoor and outdoor chores. (**See id.** at 133).

Based on the foregoing, we conclude Wife's argument that the facts of **Mercatell** compelled the court to distribute a higher percentage of the marital assets to her is not legally persuasive. Her first issue would lack merit. **See Carney**, **supra** at 131.

In her second issue, Wife argues that the trial court erred in considering the applicable factors for equitable distribution by not putting enough emphasis on Wife's financial contribution to the marriage. (**See** Wife's Brief, at 29-35). We disagree.

Pursuant to 23 Pa.C.S.A. § 3502(a), [**Equitable division of marital property**], when fashioning equitable distribution awards, the trial court must consider: the length of the marriage; any prior marriages; age, health, skills, and employability of the parties; sources of income and needs of the parties; contributions of one party to the increased earning power of the other party; opportunity of each party for future acquisitions of assets or income; contribution or dissipation of each party to the acquisition, depreciation or appreciation of marital property, value of each party's separate property, standard of living established during the marriage; economic circumstances of each party and whether the party will be serving as custodian of any dependent children. **The weight to be given to these statutory factors depends on the facts of each case and is within the court's discretion.**

*Schenk v. Schenk*, 880 A.2d 633, 643 (Pa. Super. 2005) (citations omitted; some emphasis added).

Here, the trial court observed:

The master addressed the [s]ection 3502(a) factors and thoroughly analyzed them in her recommendation and report. (*See* Report and Recommendation, at 17-26). In the evaluating the factors, she determined that both parties have relatively similar education levels, earning capacity, and health. . . . While the master acknowledges that Wife was primary breadwinner during the marriage, contribution of a party in the acquisition of marital property is only one [] factor to be considered. . . .

(Trial Ct. Op., at 6) (unnecessary capitalization omitted; citation formatting provided).

The trial court further supported the finding regarding the contribution factor by observing that, while Wife was the primary earner, the evidence did not support "[her] contention that Husband willfully and deliberately failed to contribute to the marriage." (*Id.* at 8). We agree.

As previously observed, the record reflects that Husband worked full-time for the majority of the marriage, purchased groceries, recreational items, and vacations for the parties, shared household chores, maintained their vehicles, and gave Wife money toward household bills. Based on the foregoing, the trial court properly exercised its discretion in considering Wife's contribution to the marriage, and in adopting the master's recommendation of the standard allocation of marital assets. **See Carney**, **supra** at 131. Wife's second issue would not merit relief.

In her third and fourth issues, Wife argues that the trial court abused its discretion in adopting the master's report and recommendation because the master unlawfully weighed the evidence in favor of Husband, and found both parties credible. (**See** Wife's Brief, at 35-51). We remind Wife that it was for the trial court to weigh the evidence and determine credibility and that we give a master's report and recommendation the "fullest consideration, particularly on the question of credibility of witnesses." **Carney**, **supra** at 131. Therefore, because the record supports the trial court's determinations in this regard, we decline to re-weigh the evidence. **See id.** Wife's third and fourth issues would lack merit, even if not waived.

In her fifth issue, Wife again argues that the trial court erred in its distribution of the marital assets. (**See** Wife's Brief, at 51-58). Specifically, she claims that the court "should have rendered a separate allocation of [her] retirement benefits[.]" (**Id.** at 51). She maintains that the parties entered

an oral agreement regarding the retirement benefits because Husband "wanted nothing to do with [them] and considered them hers and hers alone[.]" (*Id.* at 54). This issue would not merit relief.

In addressing Wife's argument regarding retirement benefits, the trial court observed:

> . . . [T]he evidence of record belies Wife's assertion that Husband entered into a binding oral contract to waive any and all interest in her 401(k) plan. It is undisputed that Husband consented to the change in beneficiary. He did not, however, forfeit all of his interest as he remained the contingent beneficiary. (*See* N.T. Hearing, at 36). Likewise, Husband testified that he signed the change of beneficiary form at the request of Wife because he never thought that the parties would get a divorce. (*See id.* at 130). The evidence indicates that Wife was not contemplating divorce at the time, but the parties were experiencing difficulties in their marriage. (*See id.* at 37). Clearly, Husband believed that if Wife lived to her retirement, both of the parties would benefit from Wife's 401(k) during their retirement years.

(Trial Ct. Op., at 11) (record citation formatting provided). We discern no abuse of discretion.

The trial court had the broad discretion to distribute the marital property equitably, including Wife's retirement benefits, in the manner it deemed just, under the circumstances. *See Carney*, *supra* at 131; 23 Pa.C.S.A. § 3502(a). Wife has failed to provide clear and convincing evidence that "the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will[.]" *Carney*, *supra* at 131 (citation omitted). Her fifth issue would not merit relief, even if not waived.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/14/18